UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KEON COLLINS,

                          Plaintiff,

        v.                                              9:05-CV-0904
                                                        (LEK/GHL)

FEDERAL BUREAU OF PRISONS;
HARLEY LAPPIN, Director, F.B.O.P.;
D. SCOTT DODRILL, Northeast Regional Director,
F.B.O.P.; JOHN NASH, Warden, F.C.I. Fort Dix;
T.R. CRAIG, Warden, F.C.I., Ray Brook;
MR. HOLT, Warden, F.C.I. Schuylkill;
R. PAINTER, Case Manager, F.C.I. Schuylkill; and
MS. SHIRES, Counselor, F.C.I. Schuylkill,

                          Defendants.

APPEARANCES:                                            OF COUNSEL:

KEON COLLINS, 04949-043
   Plaintiff, *Pro Se*
F.C.I. Ray Brook
P.O. Box 9009
Ray Brook, New York 12977

HON. GLENN T. SUDDABY                                   BARBARA D. COTTRELL
United States Attorney for the                          Assistant United States Attorney
   Northern District of New York
445 Broadway
218 James T. Foley U.S. Courthouse
Albany, New York 12207-2924

GEORGE H. LOWE, United States Magistrate Judge[1]

---

[1]        I would like to thank my intern, Francesco P. Trapani, currently a second-year law student at Syracuse University College of Law, who assisted in the researching and writing of this Report-Recommendation.

## REPORT-RECOMMENDATION

_____This matter has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court.  In this civil rights action, federal inmate Keon Collins ("Plaintiff") alleges that seven employees of the Federal Bureau of Prisons ("F.B.O.P.") violated his rights under the First and Fourteenth Amendments by transferring him in retaliation for his exercise of a constitutionally protected right.  (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.].)

More specifically, Plaintiff alleges that, on or about October 21, 2004, F.B.O.P. Director Harley Lappin, F.B.O.P. Northeast Regional Director D. Scott Dodrill, F.C.I. Fort Dix Warden John Nash (who was, at the time, the *former* Warden of F.C.I. Shuylkill), F.C.I. Schuylkill Warden Ronnie R. Holt (who was, at the time, the Warden of F.C.I. Shuylkill), F.C.I. Schuylkill Case Manager Rick Painter, F.C.I. Schuylkill Unit Counselor Denise Shires, and/or F.C.I. Ray Brook Warden T.R. Craig ("Defendants") improperly caused Plaintiff to be transferred from F.C.I. Schuylkill (in central Pennsylvania) to F.C.I. Ray Brook (in northern New York) on or about October 22, 2004, in retaliation for Plaintiff's exercise of his constitutionally protected right to file a grievance on or about October 8, 2004, alleging that he was subjected to "abusive language" by Defendants Painter and Shires on or about September 20, 2004.  (*Id.*)

Currently before the Court is Defendants' motion to dismiss or, in the alternative, motion for summary judgment.  (Dkt. No. 18.)  Generally, Defendants' motion is premised on, *inter alia*, their argument that Plaintiff has failed to adduce any evidence, or even allege any facts indicating, that there was a violation of either the First or Fourteenth Amendments, and, in the

2

alternative, their argument that Plaintiff has failed to establish, or even allege, the personal

involvement of Defendants in the alleged constitutional violations.  (Dkt. No. 18, Part 2 [Defs.'

Mem. of Law].)  For the reasons discussed below, I agree with Defendants and therefore

recommend that their motion be granted.

## I.   BACKGROUND

### A.   Plaintiff's Complaint

Because of Plaintiff's special status as a *pro se* litigant, I construe the allegations of his

Complaint in light of the assertions contained in his papers in response to Defendants' motion to

dismiss for failure to state a claim.[2]  Liberally construed, Plaintiff's *pro se* Complaint sets forth

the following allegations.

On September 20, 2004, Plaintiff attended an "Unit Team Review" meeting at F.C.I.

Schuylkill with Defendants Painter and Shires.[3]  During this meeting, Plaintiff asked whether he

---

[2]      "Generally, a court may not look outside the pleadings when reviewing a Rule
12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants
generously makes it appropriate to consider plaintiff's additional materials, such as his
opposition memorandum."  *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2
(S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987]
[considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases
where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to
consider materials outside the complaint to the extent they 'are consistent with the allegations in
the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering
factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part
on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on
case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a
matter of right, to amend his complaint once at any time before the service of a responsive
pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39
(2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to
dismiss) (citations omitted).

[3]      (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

could be transferred to a facility closer to his family in California.[4]  In response, Defendant

Painter became enraged, and said, "You are a stupid and insignificant person . . . stop jerking

off[.]  I . . . have explained this matter to you several times already."[5]  Defendant Shire found

Defendant Painter's remarks "amusing."[6]

On September 22, 2004, Plaintiff received an "Informal Resolution Form," following his

complaint about Defendant Painter's "offensive and abusive language" (which Plaintiff alleged

was in violation of F.B.O.P. Program Statement 3420.09, setting forth standards of employee

conduct).[7]  Plaintiff had to complete the Informal Resolution Form prior to filing a formal

complaint about Defendant Painter's conduct, pursuant to 28 C.F.R. § 542.13(a), which provides

as follows: "Informal resolution. . . . [A]n inmate shall first present an issue of concern

informally to staff, and staff shall attempt to informally resolve the issue before an inmate

submits a Request for Administrative Remedy.  Each Warden shall establish procedures to allow

for the informal resolution of inmate complaints."[8]  On or before October 6, 2004, Plaintiff filed

an "Informal Resolution Form," certifying that he had been unable to informally resolve his

---

[4]        (Dkt. No. 21, Plf.'s Mem. of Law, at 2.)

[5]        (Dkt. No. 21, Plf.'s Mem. of Law, at 2-3; *see also* Dkt. No. 1, ¶ 6 [Plf.'s Compl.,
alleging that Defendant Painter referred to Plaintiff "as a stupid and insignificant person"].)

[6]        (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

[7]        (Dkt. No. 21, Plf.'s Mem. of Law, at 3 [alleging, "On September 22, 2004,
plaintiff requested an informal resolution pursuant to 28 CFR § 542.13 to seek redress for Rick
Painter's offensive and abusive language in violation of Program Statement 3420.09 . . . ."].)

[8]        (*Id*.)

complaint.[9]  On October 8, 2004, Plaintiff filed a formal "Request for Administrative Remedy."[10]

Meanwhile, on October 7, 2004, Defendant Painter had submitted a request to transfer Plaintiff.[11]  On October 21, 2004, Plaintiff was designated for an "Increase of Population" transfer to F.C.I. Ray Brook.[12]  However, the designation occurred without the issuance of a "transfer progress report," in violation of 28 C.F.R. § 524.41(d), which provides as follows: "The Bureau of Prisons prepares the following types of progress reports. . . .  Transfer Report–prepared on an inmate recommended and/or approved for transfer to a community correction center (CCC) or to another institution and whose progress has not been summarized within the previous 180 days."[13]

On April 24, 2005, Plaintiff filed an "Inmate Request to Staff Member," stating, "I would like to know was a progress report prepared for me prior to my being transferred from FCI Schuykill to FCI Raybrook."[14]  On April 27, 2005, he received a written response from a

---

[9]    (Dkt. No. 21, Plf.'s Mem. of Law, at 11 [alleging that Plaintiff "initially filed his complaint [on] October 6, 2004, through the informal resolution process under 28 C.F.R. § 542.13 before proceeding with [the] official three levels of the Administrative Procedure Process pursuant to 28 C.F.R. § 542.14, 15"; and citing, and thus incorporating by reference, Dkt. No. 18, Part 10, at 11-13, which indicates that Plaintiff was issued a "Request for Administrative Remedy Form BP-9" on October 6, 2004, after his unsuccessful attempt to informally resolve his complaint].)

[10]    (Dkt. No. 1, ¶ 6 [Plf.'s Compl., alleging, "On October 8, 2004, plaintiff . . . submitted a 'Request for Administrative Remedy' to the Former Warden of F.C.I. Schuykill, John Nash . . . ."].)

[11]    (Dkt. No. 21, Plf.'s Mem. of Law, at 3.)

[12]    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 21, Plf.'s Mem. of Law, at 3.)

[13]    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 21, Plf.'s Mem. of Law, at 3.)

[14]    (Dkt. No. 21, Plf.'s Mem. of Law, Ex. A; *see also* Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 21, Plf.'s Mem. of Law, at 3.)

corrections officer, who stated, "Your file did not have a progress report from Schuykill.  I prepared one in January '05."[15]  Plaintiff subsequently filed several appeals from that response; however, his appeals were rejected and/or denied.[16]

Based on the foregoing factual allegations, Plaintiff claims that Defendants *intentionally* disregarded the requirement for a "transfer progress report," because of the complaint he had he filed against Defendant Painter.[17]

### B.    Defendants' Motion

Currently before the Court is Defendants' motion to dismiss, or in the alternative, for summary judgment.  (Dkt. No. 18.)  Defendants' motion raises the following four issues: (1) whether Plaintiff has failed to exhaust his administrative remedies with regard to the claims asserted in his Complaint; (2) whether Defendants are entitled to dismissal on the basis of qualified immunity; (3) whether Plaintiff has failed to establish, or even allege, the personal involvement of Defendants in the alleged constitutional violations, and (4) whether Plaintiff has failed to establish, or even allege, that there was a violation of either the First or Fourteenth Amendments.  (Dkt. No. 18, Part 2, at 7-20 [Defs.' Mem. of Law].)  Because I find that the resolution of the third and fourth issues are dispositive in deciding Defendants' motion, I need not, and do not, reach the merits of the first two issues.

---

[15]    (Dkt. No. 21, Plf.'s Mem. of Law, Ex. A; *see also* Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 21, Plf.'s Mem. of Law, at 3.)

[16]    (Dkt. No. 21, Plf.'s Mem. of Law, Ex. A; *see also* Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 21, Plf.'s Mem. of Law, at 3.)

[17]    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 21, Plf.'s Mem. of Law, at 3-4.)

## II.   LEGAL STANDARD

### A.   Standard on Motion to Dismiss

A defendant may move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To prevail on a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," a defendant must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief,"[18] or the defendant must show that the plaintiff's claim "fails as a matter of law."[19] Thus, a defendant may base a Rule 12(b)(6) motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2);[20] or (2) a challenge to the legal cognizability of the claim.[21]

---

[18]   *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (citations omitted); *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.") [internal quotations and citation omitted].

[19]   *Phelps v. Kapnolis*, 308 F.3d 180, 187 (2d Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 108, n.16 [1976].)

[20]   *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[21]   *See Swierkiewicz*, 534 U.S. at 514 ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v.*

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although Rule 8(a)(2)

does not require a pleading to state the elements of a prima facie case,[22] it does require the

pleading to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon

which it rests."[23]  The purpose of this rule is to "facilitate a proper decision on the merits."[24]  A

complaint that fails to comply with this rule "presents far too heavy a burden in terms of

defendants' duty to shape a comprehensive defense and provides no meaningful basis for the

_____

*McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice
requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim
upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of
course, none of this is to say that a court should hesitate to dismiss a complaint when the
plaintiff's allegation . . . fails as a matter of law.") (citation omitted); *Kittay v. Kornstein*, 230
F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s
requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient
information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab.
Litig.*, 379 F. Supp. 2d 348, 370 (S.D.N.Y. Apr. 20, 2005) ("Although Rule 8 does not require
plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim.") (citation
omitted); *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS
23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the
cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]);
*accord, Straker v. Metro Trans. Auth.*, 331 F. Supp. 2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre
v. Mako's, Inc.*, 01 Civ. 4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002)
(identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the
sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the
claims).

[22]    *See Swierkiewicz*, 534 U.S. at 511-512, 515.

[23]    *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that
the complaint failed to meet this test) (quoting *Conley*, 355 U.S. at 47); *see also Swierkiewicz*,
534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics
Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[24]    *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48).

8

Court to assess the sufficiency of [plaintiff's] claims."[25]

The Supreme Court has characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has rejected judicially established pleading requirements that exceed this liberal requirement. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-514 (2002) (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake."). However, even this liberal notice pleading standard "has its limits."[26]

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the

---

[25]  *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[26]  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003); *see, e.g., Dura Pharmaceuticals*, 125 S. Ct. at 1634-1635 (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*. *See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

plaintiff's favor."[27]  "This standard is applied with even greater force where the plaintiff alleges

civil rights violations or where the complaint is submitted *pro se*."[28]  Indeed, "courts must

construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they

suggest."[29]

Moreover, when addressing a *pro se* complaint, generally a district court "should not

dismiss without granting leave to amend at least once when a liberal reading of the complaint

gives any indication that a valid claim might be stated."[30]  However, "all normal rules of pleading

are not absolutely suspended."[31]  For example, an opportunity to amend should be denied where

"the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will

not cure it."[32]

---

[27]      *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of
motion to dismiss) (citation omitted); *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[28]      *Hernandez*, 18 F.3d at 136 (citation omitted); *see also Deravin v. Kerik*, 335 F.3d
195, 200 (2d Cir. 2003) (citations omitted); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d
Cir. 1999) (citation omitted).

[29]      *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's
conclusory allegations of a due process violation were insufficient) (internal quotation and
citation omitted).

[30]      *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and
citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when
justice so requires").  Of course, granting a *pro se* plaintiff an opportunity to amend is not
required where the plaintiff has already been given a chance to amend his pleading.

[31]      *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y.
1980) (citations omitted), *accord*, *Gil v. Vogilano*, 131 F. Supp. 2d 486, 491 (S.D.N.Y. 2001).

[32]      *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) (citation
omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of
course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint
should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice)
(citation omitted).

**B.**     **Standard on Motion for Summary Judgment**

Because Defendants move in the alternative for dismissal under Rule 56 of the Federal Rules of Civil Procedure, it is appropriate to briefly review the standard for a motion for summary judgment.

Under Fed. R. Civ. P. 56(c), summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material[33] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[34]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).[35] The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."[36] "A dispute regarding a material fact is *genuine* if the evidence is such that a reasonable

---

[33]     A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

[34]     *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[35]     *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[36]     *Matsushita,* 475 U.S. at 585-86; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

jury could return a verdict for the nonmoving party."[37]

Imposed over this general burden-shifting framework is the generous perspective with which the Court generally views a *pro se* civil rights plaintiff's papers.[38]  For example, where a civil rights plaintiff is proceeding *pro se*, and the defendant has filed a dispositive motion, generally the Court must construe the plaintiff's complaint and opposition papers liberally so as to raise the strongest arguments that they suggest.[39]  Having said that, "[p]roceeding pro se does not otherwise relieve a [party] from the usual requirements to survive a motion for summary judgment."[40]  One of those requirements is the duty to respond to a movant's Rule 7.1 Statement of Material Facts, as discussed in the next part of this Report-Recommendation.

---

[37]     *Ross v. McGinnis*, 00 Civ. 0275, 2004 WL 1125177, *8 (W.D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

[38]     *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam* ) (*pro se* civil rights action); *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) (*pro se* civil rights action); *Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 460,  467 (S.D.N.Y. 1998) (*pro se* civil rights action), *aff'd in part*, *vacated in part on other grounds*, 205 F.3d 1324 (2d Cir. 2000) (unpublished decision).

[39]     *See Weixel v. Bd. of Ed. of City of New York,* 287 F.3d 138, 146 (2d Cir. 2002) (motion to dismiss in civil rights case); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (motion for summary judgment in civil rights case); *Thomas v. Irving,* 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (motion for summary judgment in civil rights case).

[40]     *Bussa v. Aitalia Line Aeree Italiane S.p.A.*, 02-CV-10296, 2004 WL 1637014, at *4 (S.D.N.Y. July 21, 2004) [citations omitted], *accord*, *Durran v. Selsky*, 251 F. Supp. 2d 1208, 1211 (W.D.N.Y. 2003) [citations omitted].  For example, although "[t]he work product of *pro se* litigants should be generously and liberally construed, . . . [a *pro se* litigant's] failure to allege either specific facts or particular laws that have been violated renders [an] attempt to oppose defendants' motion ineffectual."  *Kadosh v. TRW, Inc.*, No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994).

## C.      Statement of Material Facts

The facts set forth in a movant's Rule 7.1(a)(3) Statement of Material Facts will be taken as true to the extent those facts are supported by the evidence in the record[41] and are not specifically controverted by the non-movant.[42]   A district court has no duty to perform an independent review of the record to find proof of a factual dispute.[43]

Here, Plaintiff has not filed a  response to Defendants' Rule 7.1 Statement.  This deficiency in Plaintiff's response papers is especially conspicuous considering that Defendants specifically notified Plaintiff of the consequences of his failure to properly contradict the facts

---

[41]      *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243-245 (2d Cir. 2004) ("If the evidence submitted in support of the motion for summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the moving party has met this burden . . . , the district court may not rely solely on the statement of undisputed material facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion.") [citation omitted]; *see, e.g., Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3).  Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added].

[42]      *See* Local Rule 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.")

[43]      *See Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") (citations omitted); *accord, Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

asserted by Defendants in their motion.[44]  Under the circumstances, I decline to perform an

independent review of the record to find proof of a factual dispute–although I take notice of any

such proof of factual disputes that I discover during my necessary review of the record (e.g., my

review of the record to confirm that Defendants' factual assertions in their Rule 7.1 Statement are

supported by the record).  I note that, during a summary judgment analysis, any verified

complaint filed by the plaintiff should be treated as an affidavit.[45]  I also note that, here,

Plaintiff's Complaint is verified.[46]

      However, I note that, as indicated above, to be sufficient to create a factual issue, an

affidavit must, among other things, be based "on personal knowledge."[47]  An affidavit is not

---

[44]     (Dkt. No. 18, Part 1 [Defs.' Motion Papers, notifying Plaintiff that his "failure to respond to this motion by setting forth specific facts demonstrating a genuine issue of fact will result in the Court treating the facts asserted by the defendants as true and the motion might be granted absent a response from the plaintiff," and attaching the U.S. District Court for the Northern District of New York's form document entitled "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion"]; *see also* Dkt. No. 20 [Order granting Plaintiff's request for a 60-day enlargement of time in which to respond to Defendants' motion].)

[45]     *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted]; Fed. R. Civ. P. 56(c) ("The judgment sought shall be rendered forthwith if the . . . affidavits . . . show that there is no genuine issue as to any material fact . . . .").

[46]     (Dkt. No. 1 at 5B, 6 [Plf.'s Complaint, containing two verifications].)

[47]     Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to the matters stated therein."); *see also U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) [citations omitted], *cert. denied sub nom*, *Ferrante v. U.S.*, 516 U.S. 806 (1995).

based on personal knowledge if, for example, it is based on mere "information and belief" or

hearsay.[48]  In addition, such an affidavit must not be conclusory.[49]  An affidavit is conclusory if,

for example, its assertions lack any supporting evidence or are too general.[50]  Moreover, "[a]n

---

[48]     *See Patterson*, 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'. . . [Furthermore, the Rule's] requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavits also means that the affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon information and belief . . . .  Because there is no way to ascertain which portions of [Defendant's] affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993).

[49]     *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate*, 425 F.2d at 97 (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

[50]     *See, e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S. 829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

affidavit must not present legal arguments."[51]   Finally, even where an affidavit is based on

personal knowledge and is nonconclusory, it may be insufficient to create a factual issue where it

is (1) "largely unsubstantiated by any other direct evidence" and (2) "so replete with

inconsistencies and improbabilities that no reasonable juror would undertake the suspension of

disbelief necessary to credit the allegations made in the complaint."[52]

---

[51]     N.D.N.Y. L.R. 7.1(a)(2).

[52]     *See, e.g., Jeffreys v. City of New York*, 426 F.3d 549, 554-555 (2d Cir. 2005)
(affirming grant of summary judgment to defendants in part because plaintiff's testimony about
an alleged assault by police officers was "largely unsubstantiated by any other direct evidence"
and was "so replete with inconsistencies and improbabilities that no reasonable juror would
undertake the suspension of disbelief necessary to credit the allegations made in the complaint")
[citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45
(2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs'
deposition testimony regarding an alleged defect in a camera product line was, although specific,
"unsupported by documentary or other concrete evidence" and thus "simply not enough to create
a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789,
2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified
complaint, which recounted specific statements by defendants that they were violating his rights,
was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact
with regard to all but one of prisoner's claims, although verified complaint was sufficient to
create issue of fact with regard to prisoner's claim of retaliation against one defendant because
retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose
testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia
Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was
insufficient evidence to oppose defendants' motion for summary judgment where that testimony
recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence
or benign"), *aff'd*, 136 Fed. Appx. 383 (2d Cir. 2005) (unreported decision).

III.    ANALYSIS

    A.    **Whether Plaintiff Has Failed to Establish, or Even Allege, that There Was a Violation of Either the First or Fourteenth Amendments**

        1.    **Plaintiff's First Amendment (Retaliation) Claim**

Claims of retaliation like those asserted by Plaintiff find their roots in the First Amendment.[53]  Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights.[54]  Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care.[55]  As the Second Circuit has noted,

> This is true for several reasons.  First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated.  Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To prevail on a First Amendment claim of retaliation under 42 U.S.C. § 1983, a plaintiff must prove by the preponderance of the evidence the following: (1) that the speech or conduct at issue was "protected"; (2) that the defendants took "adverse action" against the plaintiff–namely,

---

    [53]     *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).

    [54]     *See Gill*, 389 F.3d at 381-383.

    [55]     *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) that there was a causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff.[56]   Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone.[57]

Here, Plaintiff alleges that all seven of the individual Defendants retaliated against him--in response for his exercise of his constitutionally protected right to file a prison grievance--by improperly causing his transfer from F.C.I. Schuylkill (in central Pennsylvania) to F.C.I. Ray Brook (in northern New York) on or about October 22, 2004.[58]   I will assume for the sake of argument that Plaintiff has alleged facts indicating that a First Amendment violation occurred. The problem with Plaintiff's claim, rather, is that the present record is devoid of evidence in support of that First Amendment claim.  More specifically, even assuming that Plaintiff has adduced evidence indicating that he was engaging in a constitutionally "protected" activity (i.e., filing a prison grievance) before he sustained the alleged "adverse action" (i.e., an unwarranted prison transfer),[59] I find that Plaintiff has adduced absolutely no evidence indicating the existence

---

[56]   *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 [2d. Cir. 2001]).

[57]   *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (citations omitted).

[58]   (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.]; Dkt. No. 21, at 10-11 [Plf.'s Opp. Mem., alleging that he was transferred as a result of exercising his First Amendment right to file grievances].)

[59]   *See, e.g., Miller v. Loughren*, 258 F. Supp.2d 61, 62 (N.D.N.Y. 2003) (Munson, J.) ("Retaliatory transfer of a prisoner's housing has long been prohibited in this Circuit.  A

of a "causal connection" between the protected speech and the adverse action.[60]

For example, Plaintiff has failed to submit any evidence showing that Defendant Painter's request that Plaintiff be transferred to another prison was made *for retaliatory reasons*.  Rather, the present record establishes the following undisputed facts: (1) prior to the "Unit Team Review" meeting at F.C.I. Schuylkill between Plaintiff and Defendants Painter and Shires on September 20, 2004, Plaintiff had received two close-to-family prison transfers (a/k/a "nearer release" transfers);[61] (2) during or before the "Unit Team Review" meeting at F.C.I. Schuylkill on September 20, 2004, Plaintiff asked Defendant Painter whether he could once again be transferred to a facility closer to his family, who were now in California;[62] (3) despite explaining to Plaintiff that such a transfer was unlikely due to the fact that Plaintiff had already received two such transfers, at some point between September 20, 2004, and October 7, 2004, Defendant Painter submitted a request on Plaintiff's behalf that Plaintiff be transferred **to F.C.I. Lompoc, California,** so that he may be closer to his family;[63] (4) although Defendant Painter's request was

---

prisoner has a constitutional right to file a grievance, and retaliatory transfer of a prisoner's housing assigning for doing so, has long been prohibited in this Circuit") [citation omitted].

[60]       *See*, *e.g.*, *Loughren*, 258 F. Supp.2d at 62 (granting defendant's motion for summary judgment on plaintiff's retaliation claim because prisoner failed to submit evidence of causal link between plaintiff's filing of grievance and his prison transfer).

[61]       (*Compare* Dkt. No. 18, Part 17, ¶¶ 2-5, 7-8 [Defs.' Rule 7.1 Statement, alleging and citing evidence in support of these facts] *with* Dkt. No. 21 [Plf.'s Response Papers, failing to provide a Rule 7.1 Response, thus admitting the asserted facts pursuant to Local Rule 7.1(a)(3)].)

[62]       (*Compare* Dkt. No. 18, Part 17, ¶¶ 5-10 [Defs.' Rule 7.1 Statement, alleging and citing evidence in support of these facts] *with* Dkt. No. 21 [Plf.'s Response Papers, failing to provide a Rule 7.1 Response, thus admitting the asserted facts pursuant to Local Rule 7.1(a)(3)]; *see also* Dkt. No. 21, at 2-3 [Plf.'s Opp. Mem., admitting certain of the asserted facts].)

[63]       (*Compare* Dkt. No. 18, Part 17, ¶¶ 6-7, 9-10, 12 [Defs.' Rule 7.1 Statement, alleging and citing evidence in support of these facts] *with* Dkt. No. 21 [Plf.'s Response Papers,

signed by Defendant Holt on October 7, 2004, it was denied by the Northern Regional Office of the Federal Bureau of Prisons at some point between October 7, 2004, and October 21, 2004;[64] and (5) instead, ***in an effort to increase the population at F.C.I. Ray Brook***, the Northern Regional Office of the Federal Bureau of Prisons decided to transfer Plaintiff to F.C.I. Ray Brook.[65]  As a result, absolutely no record evidence exists establishing that it was Plaintiff's complaint about Defendant Painter (or even Defendant Painter's transfer request) that caused Plaintiff to be transferred to F.C.I. Ray Brook.[66]

Similarly, Plaintiff has failed to submit any evidence showing that Defendant Shire did anything to cause Plaintiff to be transferred to F.C.I. Ray Brook.  Nor does Plaintiff even *allege* that the sole misconduct committed by Defendant Shire–which consisted of being "amused" at Defendant Painter's remarks on September 20, 2004–was retaliatory in nature, i.e., that it was motivated by Plaintiff's prior engagement in "protected" conduct.[67]

Finally, Plaintiff has failed to submit any evidence that the other individual Defendants

---

failing to provide a Rule 7.1 Response, thus admitting the asserted facts pursuant to Local Rule 7.1(a)(3)].)

[64]     (*Compare* Dkt. No. 18, Part 17, ¶¶ 13-15 [Defs.' Rule 7.1 Statement, alleging and citing evidence in support of these facts] *with* Dkt. No. 21 [Plf.'s Response Papers, failing to provide a Rule 7.1 Response, thus admitting the asserted facts pursuant to Local Rule 7.1(a)(3)].)

[65]     (*Compare* Dkt. No. 18, Part 17, ¶¶ 15-17 [Defs.' Rule 7.1 Statement, alleging and citing evidence in support of these facts] *with* Dkt. No. 21 [Plf.'s Response Papers, failing to provide a Rule 7.1 Response, thus admitting the asserted facts pursuant to Local Rule 7.1(a)(3)].)

[66]     (*See, e.g.*, *Smith v. Campbell*, 250 F.3d 1032, 1038-1039 (6th Cir. 2001) (affirming district court's grant of summary judgment to defendants on prisoner's claim of retaliatory prison transfer because, while there was "temporal proximity" between prisoner's filing of grievances and the decision to transfer him, the unrefuted evidence offered by defendants showed that the cause of his transfer was something other than the prisoner's filing of grievances).

[67]     (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

(Defendants Lappin, Dodrill, Nash, Craig, and/or Holt) even knew, during the time of Plaintiff's

transfer to F.C.I. Ray Brook on or about October 22, 2004, that Plaintiff had previously engaged

in the protected conduct at issue (i.e., filing an administrative complaint regarding Defendant

Painter's alleged use of abusive language towards him on September 20, 2004).[68]  Nor has

Plaintiff submitted any evidence that those Defendants--to the extent they played any role

whatsoever, during the winter of 2004 and/or spring of 2005, in reviewing the propriety of

Plaintiff's transfer to F.C.I. Ray Brook--acted or failed to act the way that they did in retaliation

against Plaintiff for complaining about his transfer.[69]

     As a result, I recommend that Plaintiff's retaliation claim against all Defendants be

dismissed due to Plaintiff's failure to establish that the "protected" conduct in which he claims to

have engaged actually *caused* the "adverse action" that he claims to have sustained.

---

[68]     (*See generally* Dkt. No. 1 [Plf.'s Verified Complaint]; Dkt. No. 21, Exs. A, B [Plf.'s Papers in Response to Defs.' Motion for Summary Judgment].)  *See Croswell v. McCoy*, 01-CV-0547, 2003 WL 962534, at *8 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("[E]ven if the court found that [there had been] . . . an adverse action, [plaintiff] has failed to show that there was a causal connection between the protected speech and the adverse action.  There is nothing in the record which shows that [defendant] knew of the grievance filed the same day as [the day] that he [allegedly took the adverse action against plaintiff].  As previously mentioned, the grievance did not involve [defendant] . . . .  Moreover, there would not have been any reason to have informed [defendant] about the grievance since he was not involved."), *adopted*, Decision and Order, 01-CV-0547 (N.D.N.Y. July 29, 2003) (Hurd. J.).  Indeed, I can imagine no factual circumstances, consistent with the factual allegations of Plaintiff's Complaint, in which Plaintiff's administrative complaint would have been, during Plaintiff's transfer to F.C.I. Ray Brook, known to (1) Defendant Lappin, who was the Director of the Federal Bureau of Prisons at the time in question, (2) Defendant Dodrill, who was the Regional Director of the Northeast Federal Bureau of Prisons, at the time in question, and (3) Defendant Craig, who was the Warden of F.C.I. Ray Brook at the time in question.

[69]     (*See generally* Dkt. No. 1 [Plf.'s Verified Complaint]; Dkt. No. 21, Exs. A, B [Plf.'s Papers in Response to Defs.' Motion for Summary Judgment].)

2.      **Plaintiff's Fourteenth Amendment (Due Process) Claim**

Defendants argue that Plaintiff's Due Process Claim should be dismissed because federal prisoners such as Plaintiff have no protected liberty interest in being assigned to a particular correctional institution (and thus have no such interest in being transferred or not transferred to a particular correctional institution).[70]  Liberally construed, Plaintiff's response papers argue that (1) Plaintiff had a due process right, pursuant to 28 C.F.R. § 524.41(d), to not be transferred to another correctional institution prior to the preparation of a "transfer progress report," and (2) Plaintiff had a due process right, pursuant to 28 C.F.R. §§ 542.10-542.15, to have his complaint about his prison transfer "properly" investigated and resolved.[71]

Section 1983 provides, in pertinent part, "Every person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by *the Constitution and laws*, shall be liable to the party injured . . . ."  42 U.S.C. § 1983 [emphasis added].  The term "the Constitution and laws" refers to United States Constitution and *federal* laws.[72]  A violation of a state law or

---

[70]      (Dkt. No.18, Part 2, at 15-17 [Defs.' Mem. of Law].)

[71]      (Dkt. No. 21, Plf.'s Mem. of Law, at 11-13.)

[72]      *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery.  First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States*.") (emphasis added); *Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir. 1985) ("Recovery under 42 U.S.C. § 1983 . . . is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal* statutory right. . . .") (citation omitted; emphasis added); *Fluent v. Salamanca Indian Lease Auth.*, 847 F. Supp. 1046, 1056 (W.D.N.Y. 1994) ("The initial inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the Constitution and laws' *of the United States*.") [emphasis added].

regulation, *in and of itself*, does not give rise to liability under 42 U.S.C. § 1983.[73]

Having said that, it is true that a state may, *under certain circumstances*, create a liberty interest protected by the Fourteenth Amendment's Due Process Clause through its enactment of certain statutory or regulatory measures.  At one point, the Supreme Court held that a state created such a liberty interest if it repeatedly used explicit language of an unmistakably mandatory character in connection with requiring specific substantive predicates.[74]  However, that rule created a perverse incentive (1) for inmates to "comb" state regulations for mandatory language upon which to base claims of entitlements, (2) for courts to draw negative inferences from mandatory language in state regulations, and to involve themselves in the day-to-day management of prisons, and (3) for states to not codify prison management procedures, or to confer on correctional personnel "standardless discretion."[75]  As a result, the Supreme Court changed the rule in 1995 in the case of *Sandlin v. Connor*, shifting the courts' focus from the language of a particular state law or regulation to the nature of the deprivation.  515 U.S. 472,

---

[73]     *See Doe v. Conn. Dept. of Child & Youth Servs.*, 911 F.2d 868, 869 (2d Cir. 1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson*, 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983 . . . .") (citation omitted); *Murray v. Michael*, 03-CV-1434, 2005 WL 2204985, at *10 (N.D.N.Y. Sept. 7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings . . . do not rise to the level of constitutional violations.") (citation omitted); *Rivera v. Wohlrab*, 232 F. Supp.2d 117, 123 (S.D.N.Y. 2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.'") (citing *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 [2d Cir. 1990]).

[74]     *Hewitt v. Helms*, 459 U.S. 460, 466-472 (1983).

[75]     *Sandlin v. Connor*, 515 U.S. 472, 477-484 (1995).

23

483-484 (1995).[76]  Specifically, in *Sandlin*, the Supreme Court held that, while states may still

under certain circumstances create a liberty interest protected by the Fourteenth Amendment's

Due Process Clause, the interest "will generally be limited to freedom from restraint which . . .

imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of

prison life."  *Sandlin*, 515 U.S. at 483-484.

     Here, I find no evidence of such an atypical and significant hardship in the current record.

Nor do I even liberally construe Plaintiff's Complaint as alleging such a hardship.[77]  For these

reasons, and the reasons stated in Defendants' memorandum of law,[78] I find that Plaintiff had no

due process right to not be transferred to another correctional institution prior to the preparation

of a "transfer progress report" (and thus no right to an "investigation and resolution" of the

alleged deprivation in question).

     Even if Plaintiff had a limited due process right under the circumstances, I would find

---

[76]    *See also Blouin v. Spitzer*, 356 F.3d 348, 362-363 (2d Cir. 2004) (recognizing abrogation or modification of prior rule which focused on language of state regulation), *accord*, *Anderson v. Recore*, 317 F.3d 194, 198-200 (2d Cir. 2003), *accord*, *Watson v. City of N.Y.*, 92 F.3d 31, 37-38 (2d Cir. 1996), *accord*, *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).

[77]    I note that, even if I construed the regulation that Plaintiff cites under the Supreme Court's more liberal, pre-*Sandlin* standard for determining the existence of protected liberty interest, I would not find that the regulation contains the sort of "explicit language of an unmistakably mandatory character" sufficient to create a protected liberty interest.  Specifically, the regulation that Plaintiff cites--28 C.F.R. § 524.41(d)--provides merely that "[t]he Bureau of Prisons prepares the following types of progress reports. . . .  Transfer Report–prepared on an inmate recommended and/or approved for transfer to a community correction center (CCC) or to another institution and whose progress has not been summarized within the previous 180 days." In addition to not explicitly and unmistakably requiring that a "transfer report" be issued *before* a transfer, the regulation does not explicitly and unmistakably *require* that a "transfer report" be issued at all.

[78]    (Dkt. No.18, Part 2, at 15-17 [Defs.' Mem. of Law].)

that Plaintiff was afforded all the process that he was due.  For example, the following facts are

clearly established by the record: (1) on or about January 11, 2005, Defendant Dodrill responded

in writing to Plaintiff's November 19, 2004, appeal of the decision denying his request for a

"nearer release";[79] (2) on or about January 19, 2005, correctional officer D. Salamy prepared the

written "progress report" that Plaintiff had been requesting, and on January 20, 2005, Plaintiff

reviewed that progress report;[80] (3) on or about March 30, 2005, the Administrator of National

Inmate Appeals responded in writing to Plaintiff's January 18, 2005, appeal of Defendant

Dodrill's decision affirming the denial of Plaintiff's request for a "nearer release";[81] and (4) on or

about April 27, 2005, correctional officer D. Salamy responded in writing to Plaintiff's request of

April 24, 2005, regarding whether a progress report was prepared for Plaintiff prior to his being

transferred from F.C.I. Schuykill to F.C.I. Ray Brook.[82]

       Plainly stated, the due process rights afforded to prisoners are not absolute, but are

balanced against the rights and needs of correctional institutions, which include things like (1)

the need to be able to place a limit on the number of "nearer release" transfers afforded to a

prisoner (in order to preserve financial resources), (2) the need to be able to transfer prisoners

---

[79]    (Dkt. No. 18, Part 10, at 3-5 [Wallace Aff., Exs. B3-B5, attaching Plaintiff's appellate papers dated 11/19/04, and written response by Defendant Dodrill dated 1/11/05].)

[80]    (Dkt. No. 18, Part 7, at 1-4 [Painter Aff., Exs. C1-C4, attaching written progress report signed by D. Salamy on 1/19/05, and signed by Plaintiff as having been "reviewed" on 1/20/05].)

[81]    (Dkt. No. 18, Part 10, at 1-2 [Wallace Aff., Exs. B1-B2, attaching Plaintiff's appellate papers dated 1/18/05, and written response by the Administrator of National Inmate Appeals dated 3/30/05].)

[82]    (Dkt. No. 21, at Ex. A1 [Plf.'s Response Papers, attaching his written request to D. Salamy dated 4/24/05, and D. Salamy's written response dated 4/27/05].)

from overpopulated institutions to underpopulated institutions, and (3) the need to place reasonable limitations on the timing and grounds for appeals from decisions to transfer or not transfer inmates.

As a result, I recommend that Plaintiff's due process claim against all Defendants be dismissed due to Plaintiff's failure to establish or even allege facts indicating the existence of a protected liberty interest and/or the existence of a due process right that was violated by Defendants.

### 3.    Plaintiff's Fourteenth Amendment (Equal Protection) Claim

Defendants have moved for dismissal of Plaintiff's equal protection claim based on their argument that Plaintiff has failed to establish, or even allege, how his transfer to F.C.I. Ray Brook on or about October 22, 2004, violated his rights under the Equal Protection Clause.[83] Plaintiff has failed to respond to that argument in his memorandum of law.[84]  I find that Defendants' argument is facially meritorious.[85]  Therefore, I find that, by failing to respond to

---

[83]      (Dkt. No.18, Part 2, at 17-19 [Defs.' Mem. of Law].)

[84]      (*See generally* Dkt. No. 21, Plf.'s Mem. of Law, at 4-13 [addressing only points "1" through "5" of Defendants' memorandum of law, not points "6" and "7"].)

[85]      A review of whether a movant has met its "burden to demonstrate entitlement" to dismissal under Local Rule 7.1(b)(3) is a more limited endeavor than a review of a contested motion to dismiss.  *See*, *e.g.*, *Hernandez v. Nash*, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before a motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*") (emphasis added) (citations omitted); *Race Safe Sys. v. Indy Racing League*, 251 F. Supp.2d 1106, 1109-1110 (N.D.N.Y. 2003) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3]); *see also Wilmer v. Torian*, 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers)*, adopted by* 1997 U.S. Dist.

Defendants' argument, Plaintiff has "consented" to that argument under Local Rule of Practice

7.1(b)(3).[86]  As a result, I find that Plaintiff's Equal Protection Claim may and should be

dismissed on procedural grounds.

If I were to reach the merits of Defendants' argument about Plaintiff's equal protection

claim, I would conclude that their argument has merit.  Plaintiff's Complaint is so devoid of

factual detail regarding his equal-protection claim that it is difficult to discern under what equal-

protection legal theory he is proceeding.[87]  Liberally construing Plaintiff's Complaint, I can

imagine no factual allegations consistent with the allegations of Plaintiff's Complaint indicating

---

LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord*, *Carter v. Superintendent Montello*, 95-CV-989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F. Supp. 595 (N.D.N.Y. 1996) (Pooler, J.).

[86]      *See Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]); N.D.N.Y. L. R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); N.D.N.Y. L.R. 7.1(a) (requiring opposition to motion for summary judgment to contain, *inter alia*, a memorandum of law); *cf.* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's *response* . . . must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so *respond*, summary judgment, if appropriate, shall be entered against the adverse party.") [emphasis added].

[87]      (Dkt. No. 1, ¶ 7, "First Cause of Action" [Plf.'s Compl., alleging that the failure of the staff of F.C.I. Schuylkill to submit a "transfer progress report" upon Plaintiff's transfer to F.C.I. Ray Brook violated the Equal Protection Clause of the U.S. Constitution]; Dkt. No. 1, ¶ 7, "Third Cause of Action" [Plf.'s Compl., alleging that the Bureau of Prisons' transfer of Plaintiff to an institution beyond the 500-mile radius of his family in Los Angeles, California, violated the Equal Protection Clause of the U.S. Constitution].)

(nor can I find any evidence in the record establishing) that Plaintiff was intentionally treated

differently from similarly situated prisoners based on his being a member of a "protected class"

(e.g., due to his race, gender, ethnicity or disability) or based on his exercise of a "fundamental

right." To the extent that Plaintiff alleges that he was treated differently because he exercised his

First Amendment right to complain about the conduct of Defendant Painter and the transfer to

F.C.I. Ray Brook, by making that allegation he has not alleged that he is a member of a

"protected class."[88] Nor, by making that allegation, has he alleged that he had engaged in a

fundamental right that was burdened by Defendants' actions;[89] rather, a prisoner's fundamental

right of access to the courts requires only that prisoner be given "a reasonably adequate

---

[88]      *See Jenner v. McDaniel*, 123 Fed. Appx. 900, 906 (10th Cir. 2005) ("Mr. Jenner
further alleges that because he has sought access to the federal courts, he has been discriminated
against by Program administrators in violation of the Fourteenth Amendment Equal Protection
Clause. Mr. Jenner contends that those inmates who have not sought access to the courts have
been released from the Program while he has been forced to remain, thereby creating a suspect
class. Such a suspect class has never been recognized.").

[89]      *See Patterson v. Mundy*, 05-CV-0474, 2005 U.S. Dist. LEXIS 38216, at *8 (W.D.
Va. Dec. 21, 2005) ("It is well established that inmates have a fundamental right to 'adequate,
effective, and meaningful' access to courts. . . . However, in order to prove that this right has
been violated, an inmate must show that he has suffered an actual injury or specific harm to his
litigation efforts. . . . The requirement of 'actual injury' has been held to mean the deprivation of
legal materials 'actually prevented [plaintiff] from meeting deadlines, or otherwise prejudiced
him in any pending litigation, or actually impeded his access to the courts.'"); *Strope v. Pettis*,
03-CV-3383, 2004 U.S. Dist. LEXIS 24332, at *24 (D. Kan. Nov. 23, 2004) ("Plaintiff also
brings an equal protection claim against . . . McKune and Cummings due to their involvement in
the prison grievance process. The threshold requirement of an equal protection claim is a
showing that the government discriminated among groups. . . . 'Unless a legislative
classification either burdens a fundamental right or targets a suspect class, it need only bear a
rational relation to some legitimate end to satisfy the Equal Protection Clause.' . . . Plaintiff does
not plead that he is a member of a suspect class, nor that the government discriminated among
groups. Nor does he allege in his complaint, or in his response to this motion to dismiss, that he
was treated differently from other inmates by . . . McKune or Cummings. As such, he has failed
to allege a constitutional violation").

opportunity to present claimed violations of fundamental constitutional rights to the courts."[90]

As a result, Defendants' actions are not subject to "strict scrutiny," but must only bear a "rational relation to some legitimate end."  I find that Defendants' actions (e.g., in placing a limit on the number of "nearer release" transfers afforded to a prisoner, transferring prisoners to underpopulated institutions, and placing certain limitations on the timing and grounds for appeals from decisions to transfer or not transfer inmates) were indeed rationally related to a legitimate end, namely, preserving financial resources and/or maintaining prison security.

Finally, I note that several other problems exist with Plaintiff's equal protection claim. Among these problems is the fact that Plaintiff has adduced no evidence that Defendants *intentionally* discriminated against Plaintiff.  Also among these problems is the fact that Plaintiff does not allege that the actions taken against him were pursuant to any legislative enactment, but rather that they were the actions of persons acting *in violation of* legislative enactments and/or prison regulations; as a result, I find that Plaintiff's "equal protection" claim is not in fact an equal protection claim but is in actuality a retaliation claim, which I have already discussed above in Part III.A.1. of this Report-Recommendation.

As a result, I recommend that Plaintiff's equal protection claim against all Defendants be dismissed due to Plaintiff's failure to establish or even allege facts indicating that, during the time in question, he was a member of a "protected class" or that he was engaging in a "fundamental right" for purposes of the Equal Protection Clause.

---

[90]     *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *overruled on other grounds*, *Lewis v. Casey*, 518 U.S. 343 (1996).

**B.      Whether, in the Alternative, Plaintiff's Claims Should Be Dismissed Because Has Failed to Establish, or Even Allege, the Personal Involvement of Defendants in the Alleged Constitutional Violations**

Defendants have moved for dismissal of Plaintiff's claims based on their argument that Plaintiff has failed to establish, or even allege, how the individual Defendants were personally involved in the alleged constitutional deprivations.[91]  Plaintiff has failed to respond to that argument in his memorandum of law.[92]  I find that Defendants' argument is facially meritorious.[93]  Therefore, I find that, by failing to respond to Defendants' argument, Plaintiff has "consented" to that argument under Local Rule of Practice 7.1(b)(3).[94]  As a result, I find that Plaintiff's claims may and should be dismissed merely on procedural grounds.

Even if I were to reach the merits of Defendants' lack-of-personal-involvement argument, I would reach the conclusion that their argument has merit.  Supervisory officials (such as Defendants Lappin, Dodrill, and Craig) are personally involved in a constitutional violation only if: (1) they directly participated in that violation; (2) they failed to remedy that violation after learning of it through a report or appeal; (3) they created, or allowed to continue, a policy or custom under which the violation occurred; (4) they were grossly negligent in managing subordinates who caused the violation; or (5) they exhibited deliberate indifference to the rights

---

[91]      (Dkt. No.18, Part 2, at 19-20 [Defs.' Mem. of Law].)

[92]      (*See generally* Dkt. No. 21, Plf.'s Mem. of Law, at 4-13 [addressing only points "1" through "5" of Defendants' memorandum of law, not points "6" and "7"].)

[93]      *See*, *supra*, note 88 of this Report-Recommendation.

[94]      *See*, *supra*, note 89 of this Report-Recommendation.

30

of inmates by failing to act on information indicating that the violation was occurring.[95]

Here, Plaintiff's Complaint is devoid of any allegations regarding Defendants Lappin, Dodrill and Craig.[96]  For example, Plaintiff fails to assert any facts indicating (or present any evidence showing) how Defendants Lappin, Dodrill, and Craig were put on notice regarding Plaintiff's grievance against Defendant Painter, or the decision to transfer Plaintiff to F.C.I. Ray Brook.  The only evidence in the record indicating that Defendants Lappin, Dodrill and Craig were aware of Plaintiff's situation is Defendant Dodrill's denial of Plaintiff's appeal for "nearer release transfer."[97]  However, Defendant Dodrill's letter was dated almost three months *after* Plaintiff had been transferred.[98]  Moreover, no evidence exists showing that Defendant Dodrill-- the Regional Director for the Federal Bureau of Prisons--knew of the decision to transfer Plaintiff to F.C.I. Ray Brook at the time that decision was made, or knew of Plaintiff's complaint against Defendant Painter *at any time*.

Moreover, Plaintiff's Complaint also fails to allege facts indicating that Defendant Shires was personally involved in any of the alleged deprivations.  The only facts that Plaintiff alleges regarding Defendant Shires are that (1) she was present at the meeting on September 20, 2004, in

---

[95]    *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986) (setting forth four prongs).

[96]    (Dkt. No. 1 at ¶ 6-7 [Plf.'s Compl., alleging that "the Federal Bureau of Prisons" failed to provide a transfer progress report in retaliation for his filing a grievance against Defendant Painter]; Dkt. No. 21 [Plf.'s Opp. Mem., making no mention of Defendants Lappin, Dodrill, or Craig, or even Defendant Holt.])

[97]    (Dkt. No. 18, Part 6, at 3 [Defs.' Mem of Law].)

[98]    (*Id.*)

31

which Defendant Painter allegedly called Plaintiff "a stupid and insignificant person," and (2) she found Defendant Painter's remarks "amusing."[99]  While the behavior alleged is deplorable, it is not in violation of any constitutional provision.

As a result, I recommend that Plaintiff's claims against Defendants (especially his claims against Defendants Lappin, Dodrill, Craig, and Shires) be dismissed on the alternative ground that Plaintiff has failed to establish (or even allege facts indicating) that Defendants were *personally involved* in the alleged constitutional deprivations.

> **C.     Whether, in the Alternative, Plaintiff's Claims Should Be Dismissed Because He Has Failed to Exhaust his Administrative Remedies with Regard to His Claims**

Because I have already concluded that adequate reason exists to dismiss Plaintiff's Complaint, I need not, and I do not, reach the merits of Defendants' alternative argument that Plaintiff's Complaint should be dismissed due to the fact that Plaintiff has failed to exhaust his administrative remedies.[100]

> **D.     Whether, in the Alternative, Plaintiff's Claims Should Be Dismissed Because Defendants Are Entitled to Dismissal on the Basis of Qualified Immunity**

Again, because I have already concluded that adequate reason exists to dismiss Plaintiff's Complaint, I need not, and I do not, reach the merits of Defendants' alternative argument that Plaintiff's Complaint should be dismissed on the basis of qualified immunity.[101]

---

[99]     (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

[100]    (Dkt. No. 18, Part 2, at 7-9 [Defs.' Mem. of Law]; *see also* Dkt. No. 21, Plf.'s Mem. of Law, at 5-8.)

[101]    (Dkt. No. 18, Part 2, at 9-11 [Defs.' Mem. of Law]; *see also* Dkt. No. 21, Plf.'s Mem. of Law, at 8-10.)

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss and/or motion for summary judgment (Dkt. No. 18) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: December 7, 2006
       Syracuse, New York

George H. Lowe
United States Magistrate Judge